LUCIEN CAPONE *vs.* ALFRED N. NUNES, *Town Treasurer, et al.*

MAY 28, 1957.

PRESENT: Flynn, C. J., Condon, Roberts, Andrews and Paolino, JJ.

CONDON, J. This is a bill in equity to enjoin the town of Bristol and its treasurer from acting under certain alleged *ultra vires* resolutions of a special town meeting or under chapter 3475 of the public laws of 1955 which, it is alleged, purports to validate and enlarge such resolutions. The bill also prays that chap. 3475 and the town meeting's resolutions be declared null and void as contrary to the federal and state constitutions. After a hearing in the superior court on bill, answer, replication and proof, the trial justice denied and dismissed the bill on the ground that the resolutions were valid. The case is here on the complainant's appeal from the final decree denying and dismissing the bill.

At a special financial town meeting held on January 26, 1955 the electors of the town of Bristol qualified to vote in such meeting adopted a resolution appropriating $20,000 for the construction of a public dock. They also adopted another resolution creating a harbor development commission and electing five members thereof. The warrant for the special town meeting stated that an appropriation of $15,000 for the construction of the dock would be brought up for consideration. It contained no reference to the creation of a harbor development commission and the election of members thereof. The complainant who was at the meeting protested against the consideration of such resolutions and recorded his vote against them. Thereafter, because of such protest, some difficulty arose in borrowing the sum of $20,000. The town thereupon procured the passage of P. L. 1955, chap. 3475, which expressly validated the acts of the town meeting.

The act of the legislature was approved by the governor

on April 11, 1955, and on April 15 complainant filed the instant bill of complaint. At the hearing in the superior court he contended that the resolutions were *ultra vires* and that the legislative act was without force or effect to cure such defect since it was contrary to certain provisions of the federal and state constitutions. The trial justice rejected the contention of *ultra vires* and held that each resolution was validly adopted. Therefore, he did not consider the constitutional issues. The complainant has renewed those contentions here as the bases of his appeal.

His contentions as he has specifically set them out in his brief are substantially as follows: Each resolution is *ultra vires;* the resolution appropriating $20,000 instead of $15,-000 as stated in the warrant violates the due process clause of the fourteenth amendment to the federal constitution; chapter 3475, sections 1 to 6 violate article XXVIII, the so-called home rule amendment to the state constitution; they also violate the due process clause of the fourteenth amendment to the federal constitution; and chap. 3475 in its entirety violates the aforesaid home rule amendment and also article IV, sec. 10, of the state constitution.

The contentions based on the due process clause have not been actually argued. However, they are so obviously lacking in merit that they are not entitled to consideration. Those based on the home rule amendment are predicated on the assumption that such amendment is applicable to the town of Bristol, regardless of the fact that the qualified electors of the town have never accepted the benefits of its provisions in the manner therein expressly prescribed. Such an assumption is clearly unwarranted, either expressly or by necessary implication, by the amendment when read as a whole.

The complainant argues that section 1 of article XXVIII indicates an intent to grant immediate home rule and that each city and town may claim the benefits of the amendment even though it takes no action to frame its own char-

ter and to submit it to the qualified electors of the town for adoption. We reject such argument as unsound and contrary to the plain meaning of the entire amendment. This precise question was carefully considered by us in *Opinion to the House of Representatives*, 79 R. I. 277, and we definitely advised the House that to claim the benefits of the amendment a town or city must take affirmative action under it and in the manner therein prescribed. We also declared that unless and until a city or town took such action it continued to be subject to the plenary power of the general assembly as such power was commonly exercised over all cities and towns prior to the adoption of the amendment.

We are not aware of any reason why we should now depart from or modify that opinion. On the contrary we are convinced that such construction is correct, and we are confirmed in that view by the fact that no attempt to change the amendment as thus construed has been made in the five years that have elapsed since our opinion was given to the House of Representatives. Hence, we now expressly reaffirm it.

This leaves to be decided only the question whether the resolutions of the town meeting are *ultra vires*. We agree with the trial justice that the resolution appropriating $20,000 was not *ultra vires*. The fact that such amount is greater than the sum of $15,000, notice of which was given in the warrant, is not important. What is important to the electors, as far as legal notice to them is concerned, is that the warrant should warn them of the subject or subjects to be considered at the meeting. 4 McQuillin, Municipal Corporations (3d ed.) §13.12, p. 457.

The warrant here sufficiently apprised the electors of the fact that the subject of the construction of a dock at the expense of the town would be brought up for consideration. That was the primary question. The amount of money which should be appropriated for the project if it were ap-

proved was a mere incident. The notice contained in the warrant was therefore sufficient for the main purpose of the resolution. "All that is necessary in such a notice is that it be sufficiently explicit to call the attention of the voters to the subject to be considered and acted on." *Smith* v. *Town of Westerly*, 19 R. I. 437, 453. Hence the trial justice did not err in holding that this resolution was not *ultra vires*.

The resolution creating a harbor development commission and electing the members thereof stands on an entirely different footing. As established by the resolution, such commission is no mere committee of the town meeting authorized to perform some service incidental to the exercise of certain powers vested exclusively in the electors qualified to vote in the financial town meeting. On the contrary the members of this commission are intended to have not only the power to contract for the construction of the public dock but also the supervision and management of it as a town facility. In that respect they will act as town officials carrying on a part of the business affairs of the town that is expressly vested in the town by G. L. 1938, chap. 329, §13. By that section, towns are authorized to appoint such officers in addition to those required to be elected.

The electors qualified to vote in financial town meeting do not constitute the town. The inhabitants constitute the town as a body corporate. And the other qualified electors thereof have as great voting power as the taxpaying voters in the election of officers and the appointment of such agents. *H. P. Cornell Co.* v. *Barber,* 31 R. I. 358. The court in that case overruled anything to the contrary in *Foster* v. *Angell*, 19 R. I. 285, which is cited and relied on by respondents in the instant case. And in *Quinn* v. *Barber,* 31 R. I. 538, and *Barber* v. *Adams,* 37 R. I. 323, that view was reaffirmed.

We are of the opinion, therefore, that the special town meeting was wholly lacking in power and authority to cre-

ate the harbor development commission in question here or to elect the members thereof. However, since the general assembly in the exercise of its plenary legislative power generally under article IV, sec. 2, and particularly under the reservation in sec. 10 thereof, has validated the action of the town meeting, we cannot declare the harbor development commission to be without authority. We therefore hold that the resolution creating said commission and electing the five members thereof as validated by chap. 3475 is thereby cured of the defect of *ultra vires* which inhered in such resolution prior to that enactment.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

FLYNN, C. J., did not participate in the decision.

*Lucien Capone, pro se,* for complainant.

*Frank L. Martin,* Town Solicitor, for respondents.